**UNITED STATES**

v.

**ONE 1953 MODEL GLIDER TRAILER, SERIAL NO. 33337 et al.**

**Civ. No. 449.**

United States District Court,
E. D. North Carolina.
Wilson Division.

March 23, 1954.

Julian T. Gaskill, U. S. Atty., Goldsboro, N. C., for libellant.

Weeks & Muse, Tarboro, N. C., for claimants.

GILLIAM, District Judge.

Claimants, Schrappe Trailer Sales and Merchants and Planters Bank, filed answer to the Government's libel, setting up a lien on the libelled trailer and contending that, under the facts, the libelled property is not subject to forfeiture under the statutes. The Government insists that forfeiture lies under both Section 3116, Title 26 U.S.C.A. and Section 3321(a), Title 26.

Section 3116, so far as pertinent, reads as follows: "It shall be unlawful to have or possess any liquor or property intended for use in violating the provisions of this part (this section is codified under the provisions having to do with Industrial Alcohol Plants) or the internal revenue laws * * *, or which has been so used * * *. A search warrant may issue * * * for the seizure of such liquor or property. * * * "

Section 3321(b) (3) provides: "Every vessel, boat, cart, carriage, or other conveyance whatsoever, and all horses or other animals, and all things used in the removal or for the deposit or concealment thereof, (liquor) respectively, shall be forfeited."

These are the facts:

Schrappe Trailer Sales of Norfolk, Virginia, sold to Larry Edmondson One 1953 Model gray Glider House Trailer, Serial No. 53–28c–3337, on June 17, 1953, for a total price of $3,911.76; and the purchase was financed through Merchants and Planters Bank, Norfolk, Virginia, who took a chattel mortgage against said trailer, which mortgage was duly recorded in Edgecombe County Registry, in Book 536 at page 282; there is now due and unpaid on said mortgage and note thereby secured the sum of $3,368.46 as of December 5, 1953, with interest from that date;

The trailer was sold to Larry Edmondson to be used as a home; and was delivered by the seller to the purchaser at Oakley's Trailer Camp, in Edgecombe County, near Tarboro, N. C., and established at said location by seller's agents by setting it up on cement blocks front and rear, placing boards under the wheels located between the cement blocks, and by connecting water, lights, and sewerage, furnished by the proprietor of the trailer park; the owner of the house trailer did not own the land;

From the date of sale and delivery in July, 1953, until November, 1953, when the officers seized it, the trailer home had not been moved, and was being used by purchaser and his wife as their only home;

At the time of the purchase of the trailer, Larry Edmondson was a resident of Edgecombe County, and just prior to the seizure of the trailer was an employee of Hart Cotton Mill, Tarboro, N. C.;

He had installed in the trailer home a television set with aerial;

The automobile of Larry Edmondson was not equipped with electrical brake mechanism which is required for safe moving of the trailer; the automobile was equipped only with a bumper hitch, and to pull the trailer properly a regular hitch with channel bars coming out to a point and a two-inch ball is required; the trailer cannot be pulled with a bumper hitch; the trailer was moved to its location by the seller and an automobile especially equipped as indicated was used;

The trailer home could not be properly prepared for removal, disconnecting all attachments, etc., in less than an hour's time;

At the time of seizure of the trailer, the purchaser was in the Edgecombe County Jail;

The purchaser has no criminal record of violating Internal Revenue laws, either State or Federal; however, at the time the lien was taken the purchaser did have a reputation for violating the laws relating to liquor and the statutory inquiry was not made;

The purchaser was in jail at the time the liquor was placed in the trailer;

The trailer was sold to Larry Edmondson and financed by the claimants in good faith and without any knowledge

whatever that he may have had a reputation for violating Internal Revenue laws; and was bought by the purchaser for the purpose of using it as a home, and was being used as a home at the time of the seizure;

As the trailer home was set up and attached at its location when seized, it was incapable of being used as a conveyance;

On November 2, 1953, the officers found twenty-four gallons of illicit liquor in the trailer.

 With respect to Section 3116, Title 26, I am not in agreement with claimants' counsel that it is not applicable. The cases, or most of them, hold that this section applies to every violation of the Internal Revenue laws relating to spirituous liquors. One 1941 Buick Sedan v. United States, 10 Cir., 158 F.2d 445. Though applicable in a violation of the nature shown here, my opinion is and I hold that the language of the statute, though broad, should not be construed to embrace the libelled trailer, which at the time of seizure and for nearly five months prior was used as the permanent and only home of the owner. The mere fact that it could be moved from place to place with proper towing equipment, to me, does not alter the situation, since at the time of seizure the whole character of the trailer had been converted from vehicle or conveyance to a home and permanent abode. In the case of One 1941 Buick Sedan v. United States, above cited, the Court states, 158 F.2d at page 447: "We agree with the trial court that the provisions of Section 3116 have application to any violation of the revenue laws relating to spirituous liquors, and that any property, such as an automobile, used or intended to be used, in such violation is forfeitable thereunder." It is to be noted that the Court was careful to limit the word "property" used in the statute. The question is simply whether a home is "property" in the sense used. It is noteworthy that, although many thousands of instances have occurred in which homes were found being used in the violation of the revenue laws relating to spirituous liquors, no case can be found in which the Government even contended that a home is forfeitable. I am not persuaded that Congress used the word "property" in a sense broad enough to embrace an individual's home. It easily could have said so in express words.

Section 3321, making it unlawful to remove, deposit or conceal liquor with intent to deprive the United States of tax, carries its own forfeiture provisions, and, of course, is applicable if under wording of the statute a home-trailer such as that involved here is embraced.

 The Government insists that it is forfeitable as a conveyance and also that it is embraced by the words "all things used in the removal or for the deposit or concealment thereof". As stated above, the trailer at the time of seizure had lost its character as a conveyance and had become a home; though with proper towing equipment it could have been used as a conveyance, it was not being so used and the evidence shows that there existed no intention on the part of the owner to so use it. The trailer was not a conveyance, in my opinion, and should not be forfeited as such, nor as included in the words "all things used". I am convinced that in using these words Congress intended to include all things, though not mentioned, which are in fact conveyances. This conclusion is supported by the fact that the subsection is entitled "Conveyances". So that, if the trailer was not a conveyance, the words "all things" do not cover it.

Although thousands of trailers over the years have been used as homes, only one case seeking forfeiture has come to my attention. In Biasotti v. Clarke, D. C., 51 F.Supp. 608, it is held that a house-trailer is subject to forfeiture even though the result is harsh, but the facts there are very different. In that case the charge was that the trailer had been used in violation of the narcotics laws and the forfeiture was based on the provisions of Sections 781 and 782, Title 49, which read in part: Section 781 "It shall be unlawful (1) to transport * * * any contraband (narcotics) article in,

upon, or by means of any vessel, vehicle, or aircraft; (2) to conceal or possess any contraband article in \* \* \* any \* \* \* vehicle \* \* \* (3) to use any \* \* \* vehicle \* \* \* to facilitate the transportation \* \* \* of any contraband article. \* \* \* " Section 782 "Any vessel, vehicle, or aircraft which has been or is being used in violation of any provision of Section 781 \* \* \* shall be seized and forfeited \* \* \*."

While the trailer set up at the time of seizure in that case was strikingly similar to the setup here, it is apparent that the Court reached its decision on the past history of the trailer's use. The opinion states, 51 F.Supp. at page 609: "The facts are undisputed that on March 30, 1943, and for a long time prior thereto (about eighteen months), the petitioner and her family used the trailer as a home. It is also a well known fact that many thousands of people in this country live in trailers \* \* \*. I cannot overlook, however, the testimony that the trailer travelled through many states or the testimony of Mr. Clarke that Raymond Biasotti admitted to him that opium had been in the trailer for five years." The Court held on such evidence that the trailer was a "vehicle" within the meaning of the statute and so it was during a good part of five years during which it travelled through many states carrying narcotics. Nothing of the kind appears here. The trailer was purchased to be used as a home and was so used during the full time of purchaser's possession. There is no suggestion that it ever was used to transport liquor. The violation occurred after the trailer ceased to be a vehicle and had become a home.

The conclusion that the trailer should be considered the same as a home is supported by the reasoning in Aetna Life Ins. Co. v. Aird, 5 Cir., 108 F.2d 136, 125 A.L.R. 1436, where the Court reached the conclusion that a trailer such as this one is a building within double indemnity clause of life policy insuring against injury by burning of a building. The following quotation is from the opinion, 108 F.2d at page 137: "Streamlined,

mounted on two wheels, and capable when connected with beast or vehicle having motive and tractor power, of swift and easy motion, though it was, it was not automotive, and it was not bought to be, nor was it, used, except incidentally, for locomotion. The only use made of its movability was to get it to the place where it was to be used, just as ready cut houses, if small enough, may be and sometimes are moved, and set up complete. Well, indeed completely, equipped as a place in which to live, with beds, bath, toilet, cooking facilities, side walls, a roof and floors, and with cross walls subdividing it into parts, it was bought and equipped to be, and at the time of the fire, was being and had for a week been, used, as deceased's residence and office combined. In effect, a modern efficiency apartment, it had been transported to the oil field where the deceased was drilling a well, and there, disconnected from the automobile, it had been raised up, its four corners supported by four heavy special jacks placed directly underneath its substantial steel braced beamed floor, and its outside walls. Thus, what had been built for a dwelling or place to live, movable from place to place, was at rest, and was being occupied as a dwelling, as completely as if, instead of a trailer, it were a ready cut or knocked-down house, transported to the field, either set up, or in units for setting up.

"As such, it was certainly a building, in the sense of a dwelling, \* \* \*. It was too, a building, in the generic sense of something built or constructed for use as a shelter or habitation for man or beast. If instead, of a completed trailer, the material which made it up, had been assembled on the lease, and there built into a dwelling or habitation for deceased's use, no one could, we think, contend that the resulting structure was not a building. The fact that it was completed before transportation and equipped with wheels to roll it, does not, we think, at all change the undisputed fact that in every essential respect, it was built for and was being used by de-

ceased, as a shelter and habitation, in short, a dwelling. * * *

"Emphasizing the trailer's mobility, appellant seems to think that because it was adapted for road travel and was capable of obtaining high speeds when automobile drawn, it must be held to be, not 'a building', but a motor car. The District Judge shared appellant's sensitiveness to this factor, sufficiently to say, undoubtedly, when it was resting upon its wheels and attached to an automobile and proceeding along the highways of the state, it could not, by any stretch of the imagination, be conceived to be 'a building.' But he thought the contrary was true, when raised off its wheels and jacked up, it was for the time being, stationary and incapable of motion."

It is held that the home-trailer is not subject to forfeiture under any statutory provision and that the libel should be dismissed.

The United States Attorney will present an order dismissing the libel and directing the Marshal to deliver it to claimants upon payment of the costs of this proceeding and the accrued storage.